**UNITED STATES of America,
Appellee,**

v.

**Ramon RIVERA, Defendant-Appellant.**

No. 1024, Docket 74–1079.

United States Court of Appeals, Second Circuit.

Argued May 3, 1974.

Decided May 17, 1974.

Michael Q. Carey, Asst. U.S. Atty. (Paul J. Curran, U.S. Atty., for the Southern District of New York, John D. Gordan, III, Asst. U.S. Atty., of counsel), for appellee.

Louis R. Aidala, New York City (Henry J. Boitel, New York City, of counsel), for defendant-appellant.

Before WATERMAN, FRIENDLY and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal from a judgment of conviction entered on January 4, 1974, in the United States District Court for the Southern District of New York after a five-day jury trial before Hon. Marvin E. Frankel, United States District Judge. The indictment charged in two counts that the appellant Rivera and two others distributed, and possessed with intent to distribute, one-eighth kilogram of cocaine and also that they had conspired so to do. 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A) & 846; 18 U.S.C. § 2. Rivera's two co-defendants, out of the presence of the jury, withdrew their pleas of not guilty and pleaded guilty to both the substantive and conspiracy counts. The jury found Rivera guilty of both counts and he was sentenced by Judge Frankel to concurrent terms of two years imprisonment, to be followed by three years special parole. The co-defendants who had pleaded guilty were sentenced to concurrent

terms of five years imprisonment, to be followed by three years special parole.

There is no point in here recording the facts which reveal the usual dreary and sordid "drug bust." Rivera presented no defense at all and his guilt was amply established after a jury trial conducted by an impartial and experienced trial judge. Rivera's arguments on appeal are unconvincing, but one deserves comment.

After his arrest, Rivera was interviewed by an Assistant United States Attorney and gave a false exculpatory version of the events. This included a somewhat novel explanation for his presence at the scene of arrest: he was waiting for a bus. The Assistant who had interviewed Rivera was called as a Government witness. At the end of his testimony the following questions were asked by the prosecutor:

Q. Did you make any inquiries about his possible previous criminal record? A. I did.

Q. Did you ask him whether or not he had any convictions?

Mr. Aidala: Objection, your Honor.

The Court: Sustained.

Mr. Aidala: I move for a mistrial at this time.

The Court: That is denied. We are not interested in that subject at all. There is no information before the jury about that.

There is no question that a reversal would be appropriate here if this line of questioning had revealed to the jury that Rivera did have a criminal record unrelated to the crime charged. The cautionary instruction of the trial court would not have cured the error. United States v. Rinaldi, 301 F.2d 576, 578 (2d Cir. 1962).

On appeal, Rivera claims that the questioning by the prosecutor was prejudicial and deprived him of a fair trial even though the question was unanswered and the jury never did receive any evidence that Rivera had committed

any particular crime or indeed had a criminal record. We agree that the mere fact that the question was not answered does not end the inquiry. If the question was sufficiently insinuating and the curative instruction was not unequivocal, reversal might still be in order.

This court has faced such a situation in United States v. Semensohn, 421 F.2d 1206, 1208–1209 (2d Cir. 1970). There, on cross-examination, the prosecutor asked the defendant: "Now, you were convicted of grand larceny, weren't you?" The defense objected to the question before it was answered, and in a bench conference it emerged that the defendant had never even been charged with grand larceny although he had pleaded guilty to the misdemeanor of attempted grand larceny in the third degree for which he had not yet been sentenced. The trial judge thereupon did instruct the jury to disregard the question but also commented: "It is a rule of law that you can't show guilt of one charge by guilt or innocence of a different charge . . . ." In reversing, Judge Waterman, writing for the court, noted the insinuation created by the question, as well as the equivocal admonition of the trial bench: "The jury might well have inferred from the judge's remarks that the accused had, indeed, been convicted of grand larceny and, but for a legal technicality, the jury was not to consider that fact in weighing the accused's guilt or innocence of Selective Service violation." Id. at 1209.

We find the *Semensohn* case distinguishable since the question here was not phrased so suggestively and the currative charge was not ambiguous. While it is true that one might conclude that any question about prior convictions would not be asked by a prosecutor unless an incriminating answer could be anticipated, we believe that such possibility of prejudice was dispelled by the curative instruction of the trial judge. See United States v. Pfingst,

954

477 F.2d 177, 188 (2d Cir.), cert denied, 412 U.S. 941, 93 S.Ct. 2779, 37 L.Ed.2d 400 (1973). Moreover, in determining whether or not the prejudice, if any, was minimal, we are to look to the strength of the Government's case. United States v. Semensohn, *supra,* 421 F.2d at 1209; see United States v. Pfingst, *supra,* 477 F.2d at 188. Here, we are persuaded that the United States amply established Rivera's guilt in a five-day trial conducted by a fair and impartial jurist, and that the prosecutor's question in no way contributed to his conviction.

What is bothersome here is the fact that the question was ever asked. The Government concedes on appeal that the question was improper. The Assistant United States Attorney who conducted the trial was in fact trying his first case. There is no indication of malevolence or perhaps even of overzealousness. He has explained that Rivera actually denied that he had a criminal record, which was not the fact, and that the line of questioning was ultimately designed to attack his credibility. Since Rivera had not taken and did not take the stand, his credibility was not in issue. See generally C. McCormick, Law of Evidence § 190 (2d ed. E. Cleary 1972); 1 J. Wigmore, Evidence § 57 (3d ed. 1940).

Since the principles of the law of evidence here involved are hardly esoteric, but rather rudimentary, we do not think it unreasonable that the United States Attorney's office take appropriate steps to insure that inexperienced trial counsel become familiar with them. The defendant is entitled to be tried for the crime charged in the indictment and not for his past misconduct. While here we are satisfied that there was no taint, the area is indeed delicate and sensitive, and an otherwise unassailable verdict should not be jeopardized by clearly improper questions, which, had they not been interrupted and cured, would have inevitably led to reversal and a new trial.

Affirmed.